WILBER v. SCATCHERD et al.

(Supreme Court, Appellate Division, Third Department.  November 13, 1907.)

COMPROMISE AND SETTLEMENT—CONSIDERATION.

Where there was a controversy as to whether certain lumber billed by plaintiff to a foreign firm in defendants' name had been purchased by defendants personally or as agents of the firm, and as to the extent of defendants' liability therefor, if any, and an agreement was made whereby defendants accepted on their own account a portion of the lumber, made certain payments thereon, and were to pay for the balance on final settlement with the foreign firm, there was a sufficient consideration for the agreement, so that plaintiff could not recover in the absence of proof of such final settlement.

Appeal from Judgment on Report of Referee.

Action by John S. Wilber against John N. Scatcherd and another. From a judgment for plaintiff, defendants appeal. Reversed, and new trial granted.

The action is for lumber alleged to have been sold and delivered by the plaintiff to the defendants, who were doing business under the firm name of Scatcherd & Son. The defense is a denial and an alleged compromise and settlement of plaintiff's claim. The lumber in question consisted of what is known as pine squares and other lumber. The plaintiff claims that this lumber was purchased by the defendants for Lightbound, Rigby & Co., of Liverpool, England. The defendants conceded they purchased the pine squares from the plaintiff for export to the Liverpool concern, but deny that they purchased the other lumber, and, as to that, they were simply the agents of the plaintiff. The invoices of all the lumber were made by the plaintiff direct to the defendants, and it was shipped in the name of the defendants to Liverpool. The defendants claim, however, that the lumber other than the pine squares was allowed to be shipped in their name on the plaintiff's request to let it all go in on their invoices, and on his assuring them that he would take all the chances on it and protect them from loss if it should come. Five cars loaded with pine squares and other lumber were furnished by the plaintiff, and shipped to Liverpool via Boston. Two more were billed by the steamship company there for shipment, and three other cars were stopped in transitu at Boston. The English concern became bankrupt in September, 1903, and the defendants filed a claim in their name against the bankrupt estate for the five car loads shipped to Liverpool. After the failure of the English concern, the plaintiff demanded the payment from the defendants of the entire amount of the invoices for the squares and the other lumber. A considerable correspondence ensued between the parties, and the plaintiff finally sued the defendants for the entire amount. On November 11, 1903, Mr. Hopkins, the defendants' manager, went to Albany, and there had a talk with plaintiff, in which the respective claims of the parties were fully discussed, at the conclusion of which the plaintiff signed and delivered to the defendants a letter, of which the following is a copy:

"Albany, N. Y., 11, 11, 1903.

"Mess. Scatcherd & Son, Buffalo, N. Y.

"Gentlemen: In regard to the shipments of 10 cars of lumber recently made by me to Europe. All the squares were sold and shipped subject to inspection and mst. at destination in Europe. In the event of there being any difference in the invoices, you, of course, to use your best endeavor to get a full and honorable settlement same as you would do if shipment had been made direct from your own yard. All the lumber other than the squares was shipped entirely at my own risk in every way. You to pay me when you get your pay and to pay me only what and so much as you receive.

"John S. Wilber."

At the same time the defendants gave plaintiff a letter dated the same day, in which they said: "Just as soon as we receive proper notice from you that

suit against us is discontinued, we will send you check on account for $1,500.-
00." Subsequent thereto the defendants received a stipulation from the plain-
tiff, discontinuing the action, and the defendants thereupon sent the plaintiff
their check for $1,500. After this the Liverpool concern demanded a con-
siderable rebate from the purchase price of the squares and the other lumber,
which the plaintiff declined to allow. Further correspondence followed be-
tween the parties, and the plaintiff went to Buffalo on December 5, 1903, and
there had a conversation with Mr. Hopkins with regard to plaintiff's claim
against the defendants and the claims of the defendants respecting the con-
troversy. After this conversation the following contract or agreement was
entered into between the two parties on December 5, 1903:

"Buffalo, N. Y., Dec. 5, 1903.
"Mr. John S. Wilber, Lansingburgh, N. Y.

"Dear Sir: Our understanding of the proper settlement for the ten cars
of pine which you shipped intending for Europe is as follows: On the first
five cars that have already been shipped we pay you $28 f. o. b. Boston for the
squares and on the lumber other than the squares which was shipped on those
five cars we pay you just what we receive for it. On two of the cars now in
Boston which have been billed by the steamship company exactly the same
conditions and settlement apply. For the remaining three cars that are now
in Boston we will settle with you at $28 for the squares and $18 for the lum-
ber f. o. b. Boston as we agree to take the lumber as well as the squares
at this price. We have already paid you $1500.00 on account and the bal-
ance we will pay just as soon as we receive the final settlement.

"[Signed] Yours very truly, Scatcherd & Son, Hopkins.

"I accept the above and such settlement will be satisfactory to me and in
full. [Signed] John S. Wilber.

"B. F. Ridley, Witness."

The plaintiff subsequently made demands against the defendants for pay-
ments on account of the lumber, and the defendants declined to pay, on the
ground that they had received no remittance from Liverpool by way of settle-
ment. This suit followed, and the referee has found that there was no con-
sideration for the agreement of December 5, 1903, and gave judgment for the
plaintiff for the full amount of his claim.

From this judgment defendants have appealed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCH-
RANE, and SEWELL, JJ.

Daniel J. Kenefick, for appellants.

Lyman M. Bass and P. R. Chapman, for respondent.

CHESTER, J. It is entirely clear from the correspondence and the
other proofs that at the time the agreement of December 5, 1903, was
entered into there was a substantial and bona fide controversy be-
tween the parties, in which the defendants' position was that they
never ordered the plaintiff to ship to the Liverpool concern any lum-
ber other than the pine squares, and consequently they were not lia-
ble to the plaintiff for the other lumber; that that concern had ordered
such other lumber, and were alone liable to the plaintiff for it. The
position of the defendants in this respect was clearly supported by the
plaintiff's letters, and his testimony on the trial to the contrary was en-
titled to little weight. The position of the plaintiff, on the other hand,
was that the defendants had ordered, and were liable for, all the lum-
ber. There were also minor disputes between them with reference to
the claimed deduction from the purchase price by the Liverpool con-
cern because of some differences in measurements and dissatisfaction
as to quality.

This being the situation, the parties entered into the agreement of December 5, 1903. It may have been an unwise one for the plaintiff to enter into. Nevertheless, it appears to us to have been supported by a sufficient consideration on both sides, because of its mutuality. By it the defendants stated their understanding with reference to the five cars that had already been shipped and the two which had been billed by the steamship company, and then said that:

"For the remaining three cars that are now in Boston we will settle with you at $28.00 for the squares and $18.00 for the lumber f. o. b. Boston as we agree to take the lumber as well as the squares at this price. We have already paid you $1,500 on account and the balance we will pay just as soon as we receive the final settlement."

The defendants had disputed their liability for any of the lumber other than the squares, and here was an agreement on their part to take and pay for such other lumber on three cars in addition to that for which they admitted liability. The plaintiff claimed that the lumber had been sold f. o. b. at the place where the cars started. By this agreement the terms were stated to be f. o. b. at Boston. Pursuant to the agreement, the defendants paid all the freight on the 10 cars, amounting to $468.64. They also paid demurrage amounting to $220.70, both of which amounts they were entitled to credit for. The proof is clear that the term "final settlement," used in the agreement, had reference to the settlement of the bankrupt estate of the Liverpool concern in which both parties were interested because of the claims which had been proven in the defendants' names. The plaintiff signed this indorsement upon the agreement:

"I accept the above and such settlement will be satisfactory to me and in full."

By that he must be bound, and it furnishes a complete defense to this action, as there is no proof that there has been a final settlement of the bankrupt estate.

The learned referee was in error in giving judgment for the plaintiff in disregard of his agreement for the compromise of his claim.

The judgment should be reversed on the law and on the facts, the referee discharged, and a new trial granted, with costs to the appellant to abide the event. All concur.